## No. 10,962.

## INTERDICTION OF THOMAS W. BOTHICK.

In declaring that family meetings shall be composed of the nearest relatives and connections of a minor Arts. 281, 282, 283, C. C., merely announce a general rule, without attempting to write out therefrom exceptions which spring from the very nature and reason of things.

A judge, without the necessity of a special statute to that effect, has authority, in the exercise of a sound legal discretion, to exclude relatives and connections in such exceptional cases, and the statute now standing as Art. 28 of the Revised Civil Code must not be construed, so as to restrict his action, and confine it to cases falling under a narrow and technical definition of the term *conflicting interests.* The intention of that statute was to grant, not to withdraw, powers.

It would be a perversion of law to apply its bare letter to cases where by so doing its whole theory and object would be clearly violated.

In recommending persons for curatorship family meetings are not limited to applicants for the position, nor to parties suggested by relatives of the interdict or minor.

Women are not eligible under the law as members of a family meeting.

A PPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

*James McConnell* and *F. L. Richardson* for C. W. Drown, Curator, Appellee.

*Augustus Bernat* for Opponents and Appellants.

The opinion of the court was delivered by

NICHOLLS, C. J. In June, 1890, proceedings were instituted in the Civil District Court for the parish of Orleans by Thomas B. Bothick, James W. Bothick, Bella Bothick, wife of A. L. Lagay; Mathilde Bothick, wife of Lambert J. Franz; Lizzie Bothick, wife of M. Pitcher, and John A. Solari, looking to the interdiction of Thomas W. Bothick, and seeking the appointment of a curator for him through a family meeting. These parties were afterward joined by Jefferson D. Bothick.

All of the petitioners were sons and daughters by a first marriage of the person sought to be interdicted, with the exception of Solari, who was the husband of Annie J., a predeceased daughter, and who appeared in the suit in his capacity as natural tutor of his minor children.

In anticipation of the judgment asked for, plaintiffs united in a prayer for the appointment of either Thomas B. or James W. Bothick, or both, as curator, and of Solari as under curator.

In the petition filed it was averred not only that the father's mental condition was such as to require his interdiction, but that his present wife, Olivia Tyree, had obtained complete influence and control over him, and was using the same to his great injury and her great individual separate benefit; that she had caused him whilst in a condition of imbecility to make donations to her which should be annulled and set aside; that she had obtained from him a power of attorney, under which she was conducting his business and appropriating the moneys she received.

These allegations were inserted for the double purpose of strengthening the prayer for immediate interdiction, and of meeting the claim which, it was assumed, she would ultimately advance of being entitled to the curatorship of her husband. Petitioners averred that her actions had been of such a character that she should be denied that right. The husband and wife were made defendants to the action.

Mrs. Bothick, in her answer, denied all the charges made against herself, and, as had been expected, asserted her right to the curatorship.

The demand of the plaintiffs precipitated a very fierce and acrimonious litigation between these children and their step-mother, which seems each day to intensify and become more bitter.

During the progress of the controversy a mass of testimony was adduced disclosing family dissensions and quarrels which it would serve no good purpose to dwell upon. The initial proceeding terminated in a judgment decreeing the interdiction of Thomas W. Bothick and appointing the wife curatrix.

In his opinion in the case the district judge commented very severely upon the children in respect to their relations with their father and his wife, and commended the latter very greatly both as a wife and step-mother.

The judgment was appealed from, and on appeal the appointment of Mrs. Bothick as curatrix was annulled for the reason that the judge had made the appointment upon the theory that a wife was entitled as a matter of absolute right to that position, whilst this court held it was dative, and dependent upon the advice and consent of a family meeting. Interdiction of Bothick, 43 An. 547.

The effect of this decision was to leave Bothick interdicted and without a curator, with the applications of both Mrs. Bothick and that of the plaintiffs relatively to the curatorship outstanding and unacted upon.

On the return of the case to the District Court, James Shay (who had in the meantime been appointed under curator) and Mrs. Bothick both applied for the convocation of a family meeting to deliberate upon and recommend a person for curator—Mrs. Bothick renewing her application for the position.

In this petition Mrs. Bothick stated that the only male relatives of her husband residing in the parish of Orleans are James W. and Thomas B. Bothick, and she submitted the names of a number of persons as being friends of her husband who would be proper persons to constitute the family meeting.

It appears, from a statement of the district judge embodied in the minutes, that subsequently to this, and at his request, both sides presented a list of persons as being suitable to compose the meeting (that furnished by the plaintiffs being handed in without prejudice), and that from those lists he selected eight names, four from each, and excluding from membership in the meeting the sons, the daughters and the sons-in-law of the interdict, although both they and the under curator strenuously insisted upon their right of membership, denying the authority of the court to exclude them, and to replace them by friends.

In the daughters' opposition they took the position which they still maintain, that they were not disqualified for membership by reason of their sex.

When the family meeting, as composed, met before the notary for deliberation its members divided equally—four [voting for Charles W. Drown as curator, and four for W. O. Hart; four voted for giving the custody of the person of the interdict to his wife, and four voted blank on that subject. When the *proces verbal* showing the result reached the district judge, he *ex officio* ordered the meeting to reassemble and again deliberate, which it did, reaching, however, practically the same result as before—the only difference being that the four who had before voted for Hart now changed to Kernagan, and those who had cast blank votes now voted for Mrs. Lagay as custodian of the person. There being a dead-lock in the proceedings the judge, on being officially informed of the fact, added another mem-

ber to the body, and when, on orders to that effect, the meeting deliberated a third time, five voted for Drown, four for James W. Bothick, six for Mrs. Bothick as custodian of the person, and three for Mrs. James W. Bothick for that position.

When these proceedings were reported back Drown moved for their approval and homologation, but the application was met by opposition from the under-curator and all the plaintiffs. The opposition of all cover the same ground, only that the daughters make their exclusion from participation in the meeting a special ground.

The first ground of opposition was that there was a sufficient number of the relatives of the interdict present in the parish to have composed the family meeting, and they alone should have composed it, and that Drown had not been suggested for the curatorship by the relatives.

The second, that Art. 283 of the Civil Code does not apply to interdicts—the *third*, that there was no evidence before the court that any of the persons related to the interdict and suggested by the plaintiffs to compose the family meeting had any interest conflicting with those of the interdict, and that the mere suspicion or presumption that the sons and sons-in-law would seek the setting aside of donations made by the interdict to his wife could not take the place of evidence.

The fourth to the ninth were simply arguments to show that if the object of the relatives of the interdict in naming the curator were to institute proceedings to set aside such donations, that fact would not establish a conflict of interest, but a concurrence of interests between themselves and their father, as by success in such suits his estate would be thereby increased.

The ninth is to the effect ''that Drown is prejudiced against the interdict's children and strongly prejudiced in favor of the interdict's wife and very much devoted to her interests, and consequently incompetent to receive the appointment, and a person who, owing to his position as an intimate friend of Mrs. Bothick's and an officer of the court (sheriff), can not take the necessary proceedings and steps to attain the objects sought to be attained by the interdiction of Mr. Bothick.''

On trial the district judge dismissed the opposition, approved and homologated the proceedings of the family meeting, and under and by virtue of the same appointed Charles W. Drown as curator of the interdict Thomas W. Bothick.

From this judgment and all the interlocutory orders, rulings and decrees incident to the subject matter and leading up to it the under curator and all the plaintiffs have appealed.

The first matter before us in regular order is the contest which arose in relation to the composition of the family meeting. The objections raised prior to its sessions were not directed against the personal fitness or competency of any of its members, but were based on the fact that the sons and daughters and sons-in-law were excluded from membership. The daughters were rightly excluded by the district judge by reason of their sex (C. C. 25), and the sons and sons-in-law under the circumstances of this case were properly replaced by friends.

The plaintiffs claim that they were entitled of right to be members of that body under Arts. 281 and 282 of the Civil Code, which declare that the family meeting shall be composed of at least five relatives, or, *in default of relatives*, friends of him on whose interests they are called on to deliberate, and they contend that the present Art. 283, which is to the effect that "every person who shall have interests conflicting with those of a minor in any matter in which a family meeting may be necessary shall be incompetent to be a member of said family meeting, although he be one of the nearest relatives" does not apply to interdicts.

Articles 281 and 282 of the code are merely declaratory of a principle—they look to a general rule, but do not attempt to write out of the articles the particular exceptions to the same, which may result from the very nature and reason of things. The theory of the articles is that the nearest relatives and connections of minors being bound to them by special and direct ties would take a more earnest and lively interest in their welfare than would strangers or even friends.

The family meeting is an advisory jury—one, however, differing radically from an ordinary jury in this, that it is constituted with direct reference to its members having a bias, a partiality, an affection for those upon whose affairs it is called to deliberate. A family meeting composed of persons unfriendly or hostile to a minor, or evidently pursuing their own interests as their first motive and consideration, would outrage the spirit and purpose of the law. It would require no special statute to authorize and justify a judge in rejecting from participation in deliberations upon the affairs of either a minor

or an interdict persons who would enter upon the deliberations with such feelings and aims.

The statute of the State which now stands as Art. 283 of the Revised Code was probably presented to the General Assembly by some member of that body who, having doubts as to whether the broad and general terms of the article referred to did not forcedly cover all possible cases, was seeking to establish a more liberal and flexible legislation.    It was evidently intended to extend the judge's control over the subject matter.

We do not think the statute was specially needed for that purpose, and it would be applying to it what has been styled a " cursed interpretation " were we to hold that its effect would be to restrain the power and discretion of the judge which had existed prior to its enactment.    The law maker did not contemplate by the use of the words " conflicting interests " found in the statute, to restrict the ground of exclusion to cases which would only fall under a narrow technical definition of those terms.    C. C. 1962.

The objections leveled against the fitness and competency of the persons selected by the judge to replace the sons and sons-in-law o the interdict, urged by way of objection to the homologation of the proceedings of the meeting, should have been advanced before it took action, but even had they been so taken, they were not well taken.

We find nothing in the record which would go to show that Drown, the person recommended for curator, could not properly perform his duty to all parties.    There was no necessity that he should have applied for appointment, and none that he should have been suggested by the relations of the interdict.

We have examined the evidence on which the district judge acted, and think his course was eminently conservative and proper.    We think it beyond question that under the circumstances of this case it would be better that a stranger or friend should be curator of the interdict than one of his own family, and unquestionably better that friends should have been upon the advisory council than those whom the judge excluded.    The plaintiffs have, besides, utterly overlooked the fact that in the heated litigation which they are carrying on with their step-mother they are *all* parties to the record as plaintiffs,

and that to place them on the family meeting would be to make them substantially jurors in their own case.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment of the court below be and the same is hereby affirmed.